UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALTAIR ENGINEERING, INC.,

    Plaintiff/Counterclaim defendant,

Case No. 07-CV-13150
HON. GEORGE CARAM STEEH

vs.

LEDdynamics, Inc.,

    Defendant/Counterclaim plaintiff.

_____/

### ORDER GRANTING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO AMEND

Plaintiff Altair Engineering, Inc. ("Altair") has filed suit against defendant LEDdynamics, Inc. ("LEDdynamics") for patent infringement arising out of the sale of fluorescent tube replacement lights. After conducting a full <u>Markman</u> hearing, this Court entered an order adopting the claim construction offered by LEDdynamics. (Doc. 38). In its order, this Court construed the term "closely-spaced" as used in Claim 3 of United States Patent No. 7,049,761 ("761 Patent") to mean "not spaced-apart, such that adjacent LEDs are sufficiently close that another LED cannot fit in the space therebetween." (Doc. 38 at 36). Now before the Court is LEDdynamics' motion for partial summary judgment as to Altair's claim of patent infringement and its counterclaim for non-infringement. Also before the Court is Altair's motion for leave to amend its infringement contentions to add claims 6 through 10 of the patent-in-suit. For the reasons set forth below, the Court will grant LEDdynamics' motion for partial summary judgment of non-infringement and deny Altair's motion to amend.

I.     LEDdynamics' motion for summary judgment

In a patent infringement case, there is a two-step analytical framework for determining a motion for summary judgment. First, the claims are construed to determine their meaning and scope; in other words, to determine exactly what has been patented. Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp., 149 F.3d 1309, 1315 (Fed. Cir. 1998). The Court has already conducted this prong of the analysis. Second, the Court must consider the claims against the accused device to determine if the patented invention is found in the accused device. Id. This is a question of fact which is amenable to summary judgment. Id. To infringe a claim, each claim limitation must be present in the accused product. Dawn Equip. Co. v. Ky. Farms Inc., 140 F.3d 1009, 1014 (Fed. Cir. 1998). Summary judgment shall be granted where "if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue whether the accused device is encompassed by the patent claims." Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1304 (Fed. Cir. 1999) (citing Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)).

The accused device in this case is The Ever LED TR Tube Replacement ("TR"). In its Markman brief, Altair identified the TR as "a 48-inch LED-based light tube intended for use as a replacement for a standard fluorescent tube, [which] contains 36 LEDs uniformly arranged between end caps and bi-pin connectors." (Doc. 23 at 7). In its Markman brief, Altair included a figure showing that the TR contains one-watt LEDs, each about .25 wide, spaced 1.25 inches apart. (Id. at 8). In its infringement contentions, Altair alleged that the TR infringed claims 3, 4, 16, and 17 of the '761 Patent. The parties agree that claims 4, 16, and 17 are dependent on claim 3 and that

unless claim 3 is infringed, claims 4, 16, and 17 cannot be infringed either. Wahpeton Canvas Co. v. Frontier, Inc., 870 F.2d 1546, 1533 n.9 (Fed. Cir. 1989) (citing Teledyne McCormick-Selph v. United States, 558 F.2d 1000, 1004 (1977)).

In light of this Court's construction of Claim 3, there is no genuine issue of material fact and LEDdynamics is entitled to summary judgment. Based on this Court's construction of Claim 3, in order for the TR to infringe upon the '761 Patent, it would need to have "closely-spaced" LEDs "such that adjacent LEDs are sufficiently close that another LED cannot fit in the space therebetween." Based on the photograph of the TR supplied by Altair with its Markman brief, (Doc. 23 at 8), it is clear that another LED may fit between adjacent LEDs. The declaration of LEDdynamics' President, William McGrath, is consistent with the photograph. McGrath states that the LEDs in the TR are spaced approximately 1.25 inches apart from each other with approximately 1 inch between an edge of one LED and the edge of the next closest LED so that at least one more LED, approximately .25 inches wide, could easily fit between LEDs of the TR.

In its response to LEDdynamics' motion for summary judgment, Altair now argues, for the first time, that each LED of the TR is really comprised of six smaller LEDs grouped closely together for a total of 216 individual LEDs. In support of this claim, Altair relies on the deposition testimony of McGrath that LEDdynamics uses LEDs manufactured by Nichia and on the affidavit of patent inventor, John Ivey, who is also Altair's director of software development. Ivey testifies in his declaration that the Nichia devices are actually packages of six LEDs arranged very close to each other in a 3 by 2 pattern such that no additional LEDs could be fit between them. (Doc. 49, Ex. B at ¶ 5). His declaration includes photographs of the LEDs in the TR which show six little

3

lights within each LED. (Id. at ¶ 7-9). Altair contends that those small lights are actually LEDs themselves but LEDdynamics responds that they are merely microscopic chips. LEDdynamics further contends that Altair should be estopped from changing the definition of LED at this late stage of the proceedings as such a major change would require new discovery and a new Markman analysis. In point of fact, when asserting its infringement contentions, Altair claimed the 1.25 inch proximity of the 36 LEDs to each other within the TR infringed the Patent. At no point in this Court's Markman analysis did Altair discuss the proximity of the chips within the LED and in fact, this Court was not even aware of their existence.

Repeatedly throughout its Markman briefs, Altair referred to the 36 one-watt LEDs in the TR. In its opening brief, Altair described the TR as a "48-inch LED-based light intended for use as a replacement for a standard fluorescent tube. It contains 36 LEDs uniformly arranged between end caps and bi-pin connectors; the LEDs are spaced approximately 1.25 inches apart from each other." (Doc. 23 at 7). In its Markman response brief, Altair stated that "[d]efendant's accused product uses only 36 one watt high power LEDs." (Doc. 31 at 4). In its original Markman filings, Altair relied on Ivey's expert report wherein Ivey stated that "the LEDdynamics' product . . . uses higher power (one watt) LEDs of the surface mount type mounted on a custom printed circuit board a little over an inch apart." (Doc. 51, Ex. H at ¶ 8). In addition to Altair's consistent description of the LEDs in its Markman pleadings, its lighting expert Dr. Victor Roberts based his conclusions on the description of the TR as containing 36 one-watt LEDs and never discussed the 6 chips within each LED that Altair now claims are separate LEDs themselves. (Doc. 51, Ex. G at 46-48). During the Markman

proceeding Altair knew that the LEDs were manufactured by Nichia. Altair does not claim to have just discovered that the Nichia LEDs were comprised of six smaller lights.

Altair's only argument in response to LEDdynamics' motion for summary judgment is that it should be allowed to change the definition of LEDdynamics' LEDs at this late juncture in the litigation. Altair is estopped from doing so. Transclean Corp. v. Jiffy Lube Int'l, Inc., 474 F.3d 1298, 1307 (Fed. Cir. 2007) (citing New Hampshire v. Maine, 532 U.S. 742, 750 (2001)). Judicial estoppel prevents a party from taking inconsistent positions in the same or related litigation to protect the integrity of the court. Id. (citing Hossaini v. West Mo. Med. Ctr., 140 F.3d 1140, 1142-43 (8th Cir. 1998)). The Supreme Court has set forth several non-exclusive factors for courts to consider in deciding whether the doctrine of judicial estoppel applies. Id. (citing New Hampshire v. Maine, 532 U.S. at 750-51). Those factors include: "(1) the parties later position must be 'clearly inconsistent' with its earlier position, (2) the party must have succeeded in persuading a court to adopt its earlier position, thereby posing a 'risk of inconsistent court determinations'; and (3) 'the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" Id. Each of these factors militate in favor of applying the doctrine of estoppel here to preclude Altair from altering its definition of LED in the accused product now from that which it used during the entire Markman proceeding.

Altair's new argument that the accused device is comprised of 216 LEDs is clearly at odds with its consistent position during the entire Markman proceeding that LEDdynamics' TR contained 36 one-watt LEDs spaced approximately 1.25 inches apart. (Doc. 23 at 7, 18; Doc. 31 at 4). Altair's expert, John Ivey, described

5

LEDdynamics' LEDs in this same manner. (Doc. 51, Ex. H at ¶ 8). During the deposition of LEDdynamics' President William McGrath, Altair's own counsel stated, "I've counted 36 LEDs in the device - or in both these TRs, and it looks like they're a little over 1 inch apart?" (Doc. 51, Ex. I at 54-55). In addition, Altair included in its Markman opening brief a photograph of LEDdynamics' TR with a tape measure lined out next to it showing that the LEDs were spaced about 1.25 inches apart. (Doc. 23 at 8). Clearly, the tape measure was not measuring the microscopic distances between the chips of the LED which were not even visible in the photograph.

Altair's lighting expert Victor Roberts relied on this same photograph with the tape measure laid out next to the TR to reach his conclusions. (Doc. 51, Ex. G at 47-48). Based on his review of the photograph, Roberts opined that the uniform distribution of the LEDs throughout the length of the product was "what the '761 patent taught." (Id. at 47.) The photograph showed the same 36 Nichia LEDs for which Altair now claims each is comprised of six tiny LEDs for a total of 216 LEDs. LEDdynamics convincingly points out that if Altair intended to proceed under the novel theory that each of the 36 LEDs was actually comprised of six microscopic LEDs, then it should have sent its lighting expert one of the photographs depicting those tiny lights that it has attached to its response to LEDdynamics' motion for summary judgment. Altair did not do so because it was operating on the belief that the allegedly infringing product was comprised of 36 one-watt LEDs. Altair is estopped from altering its position now.

The second factor of the estoppel doctrine is easily met as there is no dispute that during the Markman proceeding, this Court adopted Altair's definition of LEDs in the accused device that was proffered by Altair and its expert, Ivey. (Doc. 38 at 10-11).

Finally, the third factor identified by the Supreme Court to be considered in making an estoppel determination, prejudice to the LEDdynamics or an unfair advantage to Altair, also has been satisfied.

Changing the definition of LED now would undo the entire <u>Markman</u> proceeding that has already taken place in this action and require that this Court begin a new <u>Markman</u> claim construction process. Such an endeavor would waste scarce judicial resources and would prejudice LEDdynamics. Based on this Court's claim construction, in which the Court based its understanding of the accused device on Altair's definition that the LEDs in the infringing product referred to one-watt LEDs spaced 1.25 inches apart, there is no factual dispute that LEDdynamics' TR does not infringe on the '761 Patent. The LEDs located in the TR are not "closely spaced" but are spaced apart such that another LED can be placed between adjacent LEDs. Accordingly, LEDdynamics is entitled to summary judgment as to Altair's patent infringement claims as to claims 3, 4, 16, and 17 of the '761 Patent.

LEDdynamics also seeks summary judgment on its counterclaim for non-infringement. Altair responds that the counterclaim expressly goes to "all claims" of the '761 Patent and thus brings claims 1, 6, 7, 8, 9, 10 and 23 under the motion but none of those claims involve the language "closely spaced" which was construed by the Court as part of claim construction. Summary judgment must be limited to those claims construed during the <u>Markman</u> analysis. Thus, LEDdynamics' motion for summary judgment as to its own non-infringement counterclaim is limited to claims 3, 4, 16, and 17 of the '761 Patent.

II.  Altair's motion to amend infringement contentions

Altair has moved to amend its infringement contentions to add claims 6, 7, 8, 9 and 10 of the '761 Patent.  The Complaint alleges infringement of claims 2, 3, 4, 6, 8, and 9.  On December 20, 2007, Altair submitted its infringement contentions and claimed literal infringement of claims 3, 4, 16 and 17 of the '761 Patent only.  Claims 4, 16, and 17 all depend on Claim 3.  At the time that it submitted its infringement contentions, Altair abandoned its claim of infringement of claims 2, 6, 8 and 9 of the Patent.  According to LEDdynamics, if the Court grants Altair's motion, the parties will have to litigate independent claim 1 (from which claims 6 to 9) depend and independent claim 10.  Specifically, LEDdynamics claims that at least the following claim terms would require claim construction:

> Independent Claim 1: "is mounted at an angular off-set from the circuit board"
>
> Independent Claim 1: "to establish a predetermined radiation pattern of light"
>
> Dependent Claim 8: "white LED"
>
> Dependent Claim 9: "displaced substantially continuously between opposite ends of the bulb portion"
>
> Dependent Claim 10: "angular off-set," "predetermined radiation pattern of light," and "light emitting diode-banks."

Altair argues that it should be allowed to amend its infringement contentions under Fed. R. Civ. P. 15(a) which it admits governs the filing of "pleadings" and does not expressly govern infringement contentions.  Under Rule 15(a), leave to amend pleadings shall be "freely given" where justice so requires.  Foman v. Davis, 371 U.S. 178, 182 (1962).  LEDdynamics, on the other hand, that infringement contentions are

controlled by the court's scheduling orders and amendment should only be allowed under Fed. R. Civ. P. 16(b)(4) for good cause shown. Mass. Inst. of Tech. v. Abacus Software, 462 F.3d 1344, 1358 (Fed. Cir. 2006). This Court agrees with LEDdynamics that amendment of claim contentions is governed by the Court's scheduling order and Rule 16. A court has inherent power to enforce its scheduling orders and to impose sanctions. Fed. R. Civ. P. 16(f).

"The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." Andretti v. Borla Perf. Indus., Inc., 426 F.3d 824, 830 (6th Cir. 2005) (quoting Inge v. Rock Fin. Corp., 281 F.3d 613, 625 (6th Cir. 2002)). The Court also shall consider prejudice to the nonmoving party. Id. Scheduling order amendments are left to the district court's discretion and will only be overturned where the district court "relies on clearly erroneous findings of fact, when it improperly applies the law, or when it employs an erroneous legal standard." Id. (citing United States v. Cline, 362 F.3d 343, 348 (6th Cir. 2004)).

On December 17, 2007, this Court entered a scheduling order in this case as agreed to by the parties pursuant to Rule 26(f). (Doc. 14). According to that scheduling order, Altair was required to file and serve disclosures as to each patent claim that was allegedly infringed by December 20, 2007. (Id.). Altair did in fact file and serve its infringement contentions on that date. (Doc. 15). According to its infringement contentions, Altair alleged that LEDdynamics literally infringes Claims 3, 4, 16, and 17 of the '761 Patent. Also, during discovery, LEDdynamics asked Altair to identify the claims of the Patent that it contended were infringed. Altair responded that it "has provided a

9

full answer to this interrogatory in its infringement contention document." (Doc. 51, Ex. D). Altair has failed to provide any justification for adding multiple new claims at this late date. Altair asserts that the new claims have nothing to do with the term "closely spaced" and thus, the Markman hearing did not somehow make them relevant. But Altair inspected the TR product even before the lawsuit was filed. (Doc. 51, Ex. C at 150). The device and claims involved in this lawsuit are the same now as they were before Altair filed suit. During the entire Markman process, during its original brief, its response brief, and at oral argument, Altair limited its infringement claim to Claim 3 of the '761 Patent and its dependent claims. It would be unfair to LEDdynamics and place an unreasonable burden on this Court to relitigate the entire patent infringement action now because things have not gone Altair's way. To grant Altair's motion to amend, would require the entire discovery and Markman proceedings to begin anew. Altair has failed to show good cause for such an undertaking.

The Federal Circuit has addressed the procedure for amending infringement contentions in a similar context in 02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355 (Fed. Cir. 2006). That case involved a challenge to local patent rules of the Northern District of California which required the parties to make preliminary infringement contentions early on in the case, allowed for amendment of infringement contentions 30 days after the claim construction ruling, and then only allowed for additional amendment by order of the court upon the showing of "good cause." "Good cause" was interpreted to mean that "the party seeking to amend acted with diligence in promptly moving to amend when new evidence is revealed in discovery." Id. at 1363. The Federal Circuit found that the local patent rules served the important function of

crystallizing the legal theories early on in the lawsuit so as to 'prevent the 'shifting sands' approach to claim construction.'" Id. at 1364 (citing Atmel Corp. v. Info. Storage Devices, Inc., No. C-95-1987 FMS, 1998 WL 775115, *2 (N.D. Cal. 1998)).

In 02 Micro, the Federal Circuit affirmed the denial of plaintiff's motion to amend its infringement contentions where plaintiff delayed three months after the discovery of new evidence to seek the amendment. Id. at 1367-68. The Federal Circuit explained "[i]f the parties were not required to amend their contentions promptly after discovering new information, the contentions requirement would be virtually meaningless as a mechanism for shaping the conduct of discovery and trial preparation." Id. at 1366. This case presents an even more compelling argument to deny the amendment sought as Altair does not rely on the discovery of new evidence at all but merely is unhappy with the Court's rejection of its theory of claim construction.

In deciding whether to exclude late filed infringement contentions, the factors for the court to consider are similar to those used to decide whether to exclude evidence for discovery violations or for determining whether pleading deadlines of a scheduling order should be extended. Nike, Inc. v. Adidas America, Inc., 479 F. Supp. 2d 664, 668 (E.D. Tex. 2007). Those factors include "(1) [t]he danger of unfair prejudice to the non-movant; (2) [t]he length of the delay and its potential impact on judicial proceedings; (3) [t]he reason for the delay, including whether it was within the reasonable control of the movant; (4) [t]he importance of the particular matter, and if vital to the case, whether a lesser sanction would adequately address the other factors to be considered and also deter future violations of the court's scheduling orders, local rules, and the federal rules of procedure; and (5) [w]hether the offending party was diligent in seeking an extension

of time, or in supplementing discovery, after an alleged need to disclose the new matter became apparent." Id.

Under all of the above factors, amendment of infringement contentions at this late date is unwarranted. In this case, discovery and expert discovery has closed and dispositive motions have been filed. Trial in this matter was originally scheduled to begin on February 24, 2009, (Doc. 14) although it has been delayed by agreement of the parties. Altair has not offered a reasonable explanation for its delay in seeking to amend its infringement contentions sooner. Its sole reason for the extension sought is that this Court rejected its claim construction analysis. If this Court were to accept such an excuse, it could never expeditiously adjudicate patent claims. Each time that the plaintiff failed to persuade the court to adopt its claim construction, it would be allowed to restart the lawsuit under a different legal theory. Such an exercise would convert patent infringement suits into legal gamesmanship which would drag on indefinitely. Clearly, this is not what the Federal Rules or the court's scheduling orders envision.

In this case, Altair has failed to show good cause for the amendment sought. Altair has failed to allege any newly discovered facts or change in the law which would excuse its delay in altering its infringement contentions. Altair argues that it discovered during the deposition of LEDdynamics' president, William McGrath, that LEDdynamics may have other suppliers other than Nichia. How this uncertainty excuses Altair's delay or relates to the underlying litigation is unclear, but in any event, McGrath was deposed on May 15, 2008, (Doc. 49, Ex. A), nearly two months before Altair filed its responsive Markman brief (Doc. 31) and nearly three months before the Markman hearing took place. Given this timing, McGrath's deposition testimony cannot excuse the lateness of

Altair's motion to amend.

The cases relied on by Altair fail to support its motion to amend. In <u>Mass. Inst. of Tech. v. Abacus Software</u>, 462 F.3d 1344, 1358 (Fed. Cir. 2006), the district court ordered the parties to serve preliminary infringement contentions. The parties did so. The district court then issued a claim construction ruling and notified the parties that their preliminary infringement contentions would be considered final and could not be amended absent good cause. <u>Id.</u> The Federal Circuit found that the district court had failed to provide notice to the plaintiff that its preliminary infringement contentions would be deemed final. <u>Id.</u> at 1359. By contrast, in this case, the infringement contentions were not deemed "preliminary" and thus, Altair was on notice that its infringement contentions were final absent good cause. In addition, Altair was asked during discovery to answer interrogatories seeking the scope of its claims of alleged infringement and Altair responded under oath, that it relied on its written infringement contentions only.

Altair's reliance on <u>Micro Int'l Ltd. v. Beyond Innovation Tech. Co. Ltd</u>, 521 F.3d 1351 (Fed. Cir. 2008) also is misplaced. While it is true that the Federal Circuit remanded the case after a trial to the district court to develop the infringement contentions, the reason for the remand was that the district court failed to resolve the parties' legal dispute over what certain terms of art in the patent meant. <u>Id.</u> at 1362-63. Specifically, the parties disputed what the phrase "only if" meant and the district court declined to settle the dispute during its <u>Markman</u> proceeding but left the issue for the jury to decide. <u>Id.</u> at 1361. The Federal Circuit ruled that the dispute over what the terms of the patent meant was an issue of law for the district court to decide and thus,

13

remanded the case so that a new Markman hearing could occur. Id. at 1362-63. By contrast, in this case, the Court addressed the only question of claim construction presented by Altair, namely, what the term "closely spaced" as used in Claim 3 meant. Unlike Beyond Innovation, this is not a case where the court refused to decide the legal question presented by the parties.

In its motion to amend, Altair states that the "Markman proceedings have just been concluded and it is procedurally logical for the parties to reevaluate and restate their positions at this time." Altair has misstated the posture of this case. The Court's scheduling order allowed only for limited discovery after the Markman hearing and only discovery that is "warranted due to the Markman ruling." According to the Court's scheduling order, this matter should be trial ready once the dispositive motions are decided. This is not the time to be restarting discovery for what effectively amounts to a new lawsuit. To do so would violate Federal Rule of Civil Procedure 1 which requires the court "to secure the just, speedy and inexpensive determination of every action." Such an onerous undertaking at this point in the proceeding would seriously prejudice LEDdynamics. (Doc. 51, Ex. A). LEDdynamics' president, William McGrath, has submitted an affidavit stating that it has incurred significant legal fees and defense expenses related to litigation over the claim term "closely spaced" LEDs and that it had known that Altair planned to assert many other claims and claim terms it would have defended this case very differently. The fact that this Court rejected Altair's definition of the term "closely spaced" during the Markman proceeding does not give Altair carte blanche to disregard the Court's scheduling order and begin this lawsuit anew. Altair should not be allowed to change course this late in the proceedings because its

litigation strategy did not work out as planned.

CONCLUSION

Having shown that there is no genuine issue of material fact that its LEDs are not sufficiently close together that another LED cannot fit in the space therebetween, LEDdynamics' motion for partial summary judgment (Doc. 48) hereby is GRANTED IN PART as to Altair's claim of patent infringement, and as to LEDdynamics' counterclaim with respect to claims 3, 4, 16, and 17 of Patent '761. LEDdynamics' motion for summary judgment on its counterclaim for non-infringement of "all claims" of the '761 patent, hereby is DENIED IN PART as to claims which were not construed during this Court's Markman analysis, namely claims 1, 6, 7, 8, 9, 10 and 23.

Having failed to show good cause to amend its infringement contentions to add new claims, Altair's motion to amend (Doc. 50) hereby is DENIED.

SO ORDERED.

Dated: March 24, 2009

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on March 24, 2009, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk

15