UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALTAIR ENGINEERING, INC.,

        Plaintiff,

                                          Case No. 07-CV-13150
                                          HON. GEORGE CARAM STEEH
vs.

LEDdynamics, Inc.,

        Defendant.
_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff Altair Engineering, Inc. ("Altair") has filed suit against defendant LEDdynamics, Inc. ("LEDdynamics") for patent infringement arising out of the sale of fluorescent tube replacement lights. On August 18, 2008, after considering extensive briefings and holding a full Markman hearing, this Court entered an order adopting the claim construction offered by LEDdynamics and ruled that the term "closely spaced" as used in the Claim 3 of United States Patent No. 7,049,761 ("761 Patent") means "not spaced-apart, such that adjacent LEDs are sufficiently close that another LED cannot fit in the space therebetween." (Doc. 38). LEDdynamics then filed a motion for partial summary judgment as to Altair's claim of patent infringement and its counterclaim for non-infringement. On March 24, 2009, this Court granted LEDdynamics' motion for partial summary judgment. In that order, the Court rejected Altair's claim that the 36 one-watt LEDs in the accused device, known as The Ever LED TR Tube Replacement ("TR"), were really comprised of six smaller LEDs grouped closely together for a total of 261 individual LEDs. Altair contended that the small lights within each one-watt LED

were really LEDs themselves, but LEDdynamics responded that they are merely microscopic chips. LEDdynamics also argued that Altair was judicially estopped from changing the definition of the LEDs in the accused device based on its inconsistent position during the Court's Markman analysis. The Court agreed and found that Altair was estopped from changing the definition of LEDs. The Court then ruled that based on its claim construction, and Altair's original definition that the LEDs in the infringing product referred to one-watt LEDs spaced 1.25 inches apart, there was no factual dispute that LEDdynamics' TR does not infringe on the '761 Patent. Now before the Court is Altair's motion for reconsideration of that order granting LEDdynamics' motion for partial summary judgment.

The standard of law for granting a motion for reconsideration is quite onerous. "The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case." Local Rule 7.1(g)(3). Moreover, "the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication." Id. Altair has failed to meet its burden.

Altair argues that the doctrine of judicial estoppel does not apply because it only changed its definition of LEDs in the accused device based on newly discovered evidence. Browning v. Levy, 283 F.3d 761, 776 (6th Cir. 2002) (doctrine of judicial estoppel does not apply where mere inadvertence or mistake to blame for changed position). LEDdynamics responds that the "evidence" was not so newly discovered as David Simon, the principal liaison between Altair and its outside attorneys, has

submitted an affidavit that it knew of the "closely spaced" arrangement of chips or dies (Altair alleges they were LEDs) within the one-watt LEDs as early as March 8, 2008, nearly four months prior to the Court's Markman hearing, but claims he did not appreciate their significance to this case. Altair's lawyer, Thomas Young, has submitted an affidavit stating that he learned about the composition of LEDs after the Court issued its August 12, 2008 Markman order. (Doc. 56, Ex. A). He failed, however, to raise the issue in three briefs filed in connection with its motion for reconsideration of the Court's Markman ruling. (Doc. 40, 43, and 45).

Judicial estoppel bars Altair from changing its definition of LEDs in the accused device. During the Markman hearing, Altair argued that the patent covered any LED light tube that mimicked the light from a standard fluorescent tube. When Altair failed to convince this Court of its claim construction, Altair reversed course and proffered a new definition of LED that still gave it a basis to claim that LEDdynamics infringed. Should Altair have disputed the definition of the claim term LED earlier, LEDdynamics maintains that it would have significantly expanded the litigation process by requiring that LED supplier Nichia be deposed (probably in Japan), documents subpoenaed, and industry experts called and deposed by both parties.

Altair argues that judicial estoppel does not apply to bar it from changing its definition of LED because it did not act in bad faith and just discovered the basis for its new definition of LED. The evidence, however, belies this assertion. Altair knew of this alternative definition of LED when it filed its motion for reconsideration of the Court's Markman ruling and failed to make the argument then. Altair's shift in position now, even if not taken in "bad faith," amounts to "blowing hot and cold as the occasion

3

demands," and "hav[ing] [one's] cake and eat[ing] it too." Browning v. Levy, 283 F.3d 761, 776 (6th Cir. 2002) (citations and quotations omitted) (alterations in original). Altair now argues that it only just discovered that LEDdynamics' one-watt LEDs are actually comprised of six smaller LEDs, but Altair made no such argument in its opposition to LEDdynamic's motion for partial summary judgment. In its opposition to LEDdynamic's motion for partial summary judgment, Altair did not argue that it was changing its definition of LEDs based on "newly discovered evidence." A "motion for reconsideration is not an appropriate vehicle for raising new facts or arguments" which could have been raised in prior briefing. United States v A.F.F., 144 F. Supp. 2d 809, 812 (E.D. Mich. 2001).

LEDdynamics argues that Altair's claim that LEDdynamics' one-watt LEDs are actually comprised of six smaller LEDs does not constitute newly discovered evidence because the definition of LED is not an issue of fact but an issue of law. Even if it does constitute an issue of fact, however, Altair knew of the existence of the light sources as early as May 8, 2008 based on the knowledge of David Simon - the principal liaison between Altair and its outside attorneys. Simon has submitted an affidavit that on May 8, 2008, he learned that what was advertised as "high power" LEDs "may actually be groups of closely arranged LEDs of lesser wattage." (Doc. 56, Ex. B at ¶ 3). He further avers that his knowledge about the composition of the high powered LEDs "did not strike [him] as significant to the lawsuit." (Id.) LEDdynamics points out that based on Simon's knowledge, Altair could have altered its definition of LED in its second Markman brief filed on June 7, 2008, at the July 31, 2008 Markman hearing, in its August 22, 2008 motion for reconsideration, in its October 1, 2008 reply brief in support

4

of its motion for reconsideration, in its own motion for summary judgment due on December 22, 2008, or at any point in between. At no time did Altair do so until it filed its response brief opposing LEDdynamic's motion for partial summary judgment filed on January 14, 2009. (Doc. 49). Even then, Altair did not argue that it was changing the definition of LEDs in the accused device based on newly discovered evidence. In any event, this Court agrees with LEDdynamics that Altair's changed definition of LED in the accused device is not simply a case of newly discovered evidence but is a late considered change in tactical position.

Altair argues that the doctrine of judicial estoppel does not apply here as it allegedly never "succeeded" as a result of its characterization of the accused device. Not so. Altair did succeed, in the Markman proceeding, to persuade this Court that the accused device contained 36 one-watt LEDs spaced approximately 1.25 inches apart. (Doc. 55 at 5). Altair now argues that this Court's consideration of the accused device was not relevant to its claim construction. This position contradicts Altair's argument during the Markman proceeding that "[t]he Federal Circuit has held that a district court should interpret the disputed claim terms of a patent in context of the accused product." (Doc. 23 at 7) (citing Wilson Sporting Goods Co. v. Hillerich & Bradsby Co., 442 F.3d 1322, 1326-27, 1330-31 (Fed. Cir. 2006)). In its claim construction order, this Court noted that "knowledge of the accused invention may provide the court with context but the district court must be careful 'not to prejudge the ultimate infringement analysis by construing claims with an aim to include or exclude an accused product.' Wilson Sporting Goods, 442 F.3d at 1326." (Doc. 38 at 10). Although Altair is correct that consideration of the accused invention had a limited role in the Court's claim

construction, nevertheless, it played some part in the Court's calculation.

Altair also argues that the doctrine of judicial estoppel does not apply because changing the definition of the LEDs used in the accused device will not prejudice LEDdynamics as the only ruling this Court made in the Markman proceeding was claim construction regarding the term "closely spaced." This interpretation of "closely spaced" however was based on many factors, including considering the disputed claim terms within the context of the accused device.

Finally, this Court considers LEDdynamics' opposition to certain statements Mr. Young made in his affidavit. Specifically, Mr. Young complained that LEDdynamic's president, William McGrath, should have been more forthcoming in explaining the accused device. Specifically, he states, "Mr. McGrath was an extremely reticent witness during his deposition and it is my personal suspicion that he knew my understanding of the Nichia LEDs used in the accused fluorescent tube replacement light was incorrect or at least incomplete." (Doc. 56, Ex. A at ¶ 3). LEDdynamics asserts that the above quoted statement amounts to an allegation of perjury and argues that Mr. Young should withdraw the remark with an apology. LEDdynamics contends that Mr. McGrath answered all of the questions posed to him and was never asked any questions concerning the structure of the LEDs in the accused device. LEDdynamics overstates the import of Mr. Young's affidavit.

This Court does not find that Mr. Young accused Mr. McGrath of perjury but merely stated his personal belief that Mr. McGrath was not forthcoming in correcting what Mr. Young alleges was his misunderstanding with regards to the accused device. LEDdynamics further claims that Mr. McGrath did not mislead Mr. Young because the

accused device does actually contain 36 LEDs as confirmed by Altair's lighting expert Dr. Roberts, inventor John Ivey, and the Nichia literature. It goes without saying that this case has been zealously litigated by both sides and this disagreement over Mr. Young's affidavit is no exception. While Mr. Young's comments indicate his frustration with Mr. McGrath's alleged reticence as a witness, the Court does not agree with LEDdynamics that he accused McGrath of actual perjury. Accordingly, no action by this Court in relation to this affidavit is required.

For the reasons stated above, plaintiff's motion for reconsideration (Doc. 56) hereby is DENIED.

SO ORDERED.

Dated: June 4, 2009

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on June 4, 2009, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk